Parker C. J.,
in delivering the opinion of the Court, said it was not necessary to decide whether any notice to quit is requisite where the estate is a tenancy at will. It is a difficult question ; for although the law is settled in England and in New York, yet that does not determine the question for us, since their statutes are different from ours.* *77 If notice, "however, is necessary, it must be regulated by *78 the terms on which the estate has been held. If a house is let by parol by the month or week, as is frequently the case *79 with small tenements in large towns, it would be absurd to say that six months’ notice shall be required. If it were re *80 quired, it would be a great embarrassment to landlords, ana consequentially be very injurious to tenants. '
*81 In the present case the tenant held under the demandant without any special agreement as to the time during which *82 he was to continue in possession, or as to the payment of rent; but it appears that in a suit brought against him by *83 the demandant to recover the rent, he was charged by the month. This must be considered as evidence of an under *84 standing that he was to hold from month to month. JNow it appears by his own confession, that he was requested to *85 go out of the premises two months before this suit was commenced. If by our law notice is necessary, this was sufficient.* [1]

Nonsuit taken off.

 In the case of Ellis v. Paige et al., 1 Pick. 47, Mr. Justice Wilde, in delivering the opinion of the Court, declared it as his own opinion, that a tenant at will is not entitled to notice to quit, in the sense in which these terms are used in the law of England; but I have learned that Jackson and Put nam, Justices, had come to a different result on this point, which, however, was not necessary to be determined in that case, and it appears by these remarks of the Chief Justice, that the question is not considered as settled. Since the publication of the first volume I have been favored with the following opinion, which was drawn up by Putnam J. in the case above mentioned, but which through mistake was not delivered.
Ellis versus Paige et al.
Putnam J. This being a parol lease, it is by the statute of 1783, c. 37, § 1, to have no other or greater effect than a lease at will.
*77 What was the effect of a lease at will at the common law, when that statute was passed ? Was it to be, as it is sometimes expressed in the old books, at the will of the lessor only ? Or was it to have the force and effect which had been established by a course of judicial decisions ? Did the legislature mean that the lessor might oust the lessee when he pleased, as it is said in some books that he may, or did they understand that this was a contract which was to be reasonably performed by the parties, and that neither of them was to be subjected to the mercy and mere caprice of the other ?
My opinion is, that they intended to give the same construction to the parol agreement here, which it would have received at that time in England. The section cited from our statute of 1783 is like the 1st section of St. 29 Car. 2, c. 3, and should receive the same interpretation. By that I mean, that the parties should have the same rights and duties here, which would have been adjudicated to them in England under such an agreement, and that it is entirely immaterial by what name the estate is called, that is, whether an estate at will, as it is sometimes called, or an estate from year to year, as it is sometimes called ; being an estate arising under a parol agreement, and affected by the statute of frauds.
I would here observe, that the statute of 29 Car. 2, (commonly called the statute of frauds,) does not profess to describe the incidents of an estate at will. It provides that leases by parol, (subject to the exceptions which 1 shall hereafter consider,) shall have the effect of leases at will. The rights of the parties to a lease at will are to be ascertained from the common law.
It is not to be denied that there are many opinions upon this subject which are irreconcilable. I shall adopt such.as appear to me to be just and reason able. The terms used to express this estate, viz. “ an estate at will,” perhaps have led to some of the extraordinary opinions which have been entertained. In some of the definitions of a tenant at will, he is said to be a tenant at the will of the lessor. But that was so obviously unreasonable, that the courts determined that it should be at the will of the lessee, as well as of the lessor, that is, in effect, that it should be at the concurrent will of both of them. See in Keilw. 65, pl. 6, (which was in 20 Hen. 7,) a case of debt upon a lease at 20 shillings a year, and so from year to year, at the will of the lessor; and the doubt was, whether the lessee should be tenant at the will of the lessor, or at the will of the lessee, or of both. This was much debated. The chief justice, Frowikc, thought that the defendant was tenant at the will of the lessor, but that this will of the lesser must have a rcasmuihle construction. The case was adjourned. But afterwards in 3 Hen. 8, Keilw. 162, pl. 4, the Court of C. B. held, that where one made a lease to R. H. to have to him at his own will, it should be taken to be at the will of both the lessor and lessee. And although it is said in some books, that the lessor may oust the lessee when he pleases, yet the courts determined that the lessee should have the emblements. Some opinions suppose that the lessor might, however, lawfully turn out the tenant even after he had sown the land, and that all the right which the lessee had was to go and take the crop when ripe ; while others, and in my opinion with greater reason, determine that the lessor should not oust the lessee until the crop should be ripe, thereby protecting the lessee in *78 the possession during the time in which the crop was ripening. Thus in 35 H. 6. 24. pl. 30, it is said by Ashton, (who is characterized as one of the sages of the law,) that “ sometimes the lessor shall not enter albeit he would, for, if it be so, that a tenant at will hath sown the land, the lessor shall not enter until the tenant shall have taken his crop.” And in 13 H. 8. 16. pl. 1, Shelley says to the same point, but more favorably for the lessee, “ a lease at will is at the will of both; nevertheless the lessor shall not put him [the lessee] out when he hath manured the land, nor shall the lessee surrender in the middle of a quarter.” He thought that the case then under consideiation was not properly a lease at will, but that it was “ a lease for one year at will, for after one year, viz. at the end of the year, he may oust him if he will.’' In the case at bar, it is a lease at will for one year. The tenant is not to be ousted until the end of it. 10 Vin. Abr. 406, tit. Estate, B. c. pl. 4, S. P. So Nelson’s Abr. tit. Estate at Will, pl. 4, S. P. It is said in another case, where the agreement was for a year and so from year to year at the will of the lessor, when the first year is determined, if the lessor suffer the lessee to enter upon the second year without notice, it shall be understood that it is agreeable to him that the lessee shall occupy for that year, for qui tucet, consentiré videtur; for that it would be contrary to reason that the lessee should occupy in the second year, and manure the land, and then when he had been at such expense, to oust him. So in 14 H. 8. 13. per Brook J. “ If a tenant at will sow tire land, the lessor for that part shall not determine his will until he hath taken the emblements.” His opinion, however, was, that if it were a lease of a house, the lessor might determine his will at any time when he pleased. That opinion has been overruled since, and the tenant, by more modern, and I may say more consistent and just decisions, is protected against an unreasonable determination of the will of the lessor, in respect to lease of a house, as well as of land. Right v. Darby, 1 T. R. 162.
In the case of Kighly v. Bulkly, 1 Sid. 339, which was before the statute of frauds, it was agreed by the court, that the law will not allow a lessee at will to determine his will, before or after the rent day, to the prejudice of the lessor, no more than it will allow the lessor to determine his will after sowing, to the prejudice of the lessee; because, as Lord Rolle used to say, such would be fraudulent determinations. What would have been then a fraudulent determination, is in the nature of things fraudulent now, and Rolle’s observation applies directly and strongly to the case at bar. The defendant agreed that the plaintiff should have the farm for a year, but in violation of his agreement, he actually ousted the plaintiff in the middle of the year, after a notice of two or three weeks. For this injury I think the plaintiff may well maintain trespass, upon the same principle which was held by Paston J., 21 H. 6. 37, that “ if the tenant at will sows the land and the lessor takes the emblements, the lessee may maintain trespass against him.”
Bro. Abr., tit. Lease, 53, cited in 10 Vin. Abr. 407, tit. Estate, C. c. “ A man leases for a year, and so from year to year at the will of the parties, or so long as both parties please; there when one year is passed and another year commenced, the lessor shall not oust the lessee until the second year be *79 finished, and the lessee shall have notice to quit for half a year before the end of the year; and the same notice upon a lease at will, as it seems; contrary upon a lease for the term of the life of another, or for years.”
There are many decisions in support of these principles. Thus in Vin. Abr. tit. Estate, B. c. pl. 3; “ after the commencement of the year the lessee at will cannot determine it to the prejudice of the lessor for his rent 2 Jo. 5, per Cur. Trin. 21 Car. 2, C. B. in case of Timberly v. How.” And by parity of reasoning my opinion is, that the lessor shall not determine his will to the prejudice of the lessee, in regard to the occupation.
It is said in Com. Dig. tit. Estates, H 9, “ A lessee paying rent at Michaelmas and Ladyday, cannot determine his will after the commencement of the half year, without paying the rent to the next feast.” “ Or, if rent be payable quarterly, after the commencement of the quarter.” “ Or, if it be a lease de anno in annum qiiamdiu fyc., after the commencement of the year; for the lessee ought to have it for the whole year.” In Carpenter v. Collins, Brownl. 89, which was in 3 Jac., it is said that “ the tenant cannot determine his will within a little time before the year end, for that would prove very mischievous to the lessor.”
These were determinations upon the principles of the common law, before the statute of 29 Car. 2, and the same principles have been followed and allowed afterwards.
Thus, in Layton v. Field, 3 Salk. 222, 13 Will. 3, B. R. Lord Holt says, “ If a lease be made from year to year, quwmdiu ambabus partibus plamierit, in such case, after a year is commenced, neither the lessor or the lessee can determine their wills for that year, because they have willed the estate certain for so long time.” So in the case at bar, the parties willed the estate for one year at least.
The effect of the statute of 29 Car. is considered in Clayton v. Blakey, 8 T. R. 3. In that case there was a parol lease for 21 years. By force of the statute it was a lease at will. And it was determined that it was void, as to the duration of the term, but that it should enure as a tenancy from year to year. So in Rigge v. Bell. 5 T. R. 471. That was a parol lease for 7 years. It was held to be void as to the duration of the term, but in other respects good; and as the tenant was to enter at Ladyday and quit at Candlemas, that the landlord could put an end to the lease at Candlemas only.
The court look at the agreement which the parties have made. If the lease is determinable at a particular time, no notice to quit is necessary, for, as is said in Right v. Darby, 1 T. R. 162, both parties are apprized of the determination. If the tenant .continues in possession after the year has expired, the agreement is supposed to be renewed, but then convenience requires that if either party shall change his mind, six months’ notice shall be given.
The principle is, that what is a reasonable performance of such a contract, must be ascertained by the particular stipulations of the parties, and the nature of the thing demised.
In Jackson d. Livingston v. Bryan, 1 Johns. R. 326, the defendant had oo *80 cupied the land for 18 years, without any written lease, and the question was, whether he was entitled to notice to quit. Thompson J. thought that he was to be considered as a tenant at will, and not entitled to notice to quit. But Spencer J. held that he was entitled to notice to quit as a tenant from year to year; and he cited with approbation Christian’s Notes in 2 Bl. Com. 147 150, in which it is said that a lease at will is now considered as a lease from year to year, which cannot be vacated without half a year’s notice. Kent C. J. concurred; and Tompkins J. referred to Parker v. Constable, 3 Wils. 25, with approbation, and to Rigge v. Bell, 5 T. R. 471, requiring six months’ notice to be given to a tenant at will.
In Timmins v. Rawlinson, 3 Burr. 1609, in 5 Geo. 3, (S. C. 1 W. Bl. 535,) Wilmot J. observes, that leases at will, in the strict legal notion of a lease at will, (that is, as I understand him, a lease which either party might instantly determine at his own pleasure, without any regard to the convenience of the other,) exist only notionally.
In the case of Parker v. Constable, 3 Wils. 25, (10 Geo. 3,) it was said by Wilmot J. et totam curiam, that it had not been doubted of late years, and it was resolved in that case, that half a year’s notice must be given to a tenant at will, before ejectment would lie against him. In Com. Dig. Pleader, 2 Z 1, (Rose’s ed.) it is said that there must be half a year’s notice ending at the expiration of the year; that any six months will not do. And where a lease was void, but rent received, eo nomine, by a remainderman, after his title accrued, it was considered an acknowledgment that the defendant was his tenant from year to year, and entitled of course to the reasonable notice to quit. Doe d. Martin v. Watts, 7 T. R. 79. Vid. Esp. N. P. 460, 461, where some of the cases are well digested.
The notice is to have relation to the tenancy, so that on a taking by the month, á month’s notice to quit may be sufficient. Doe d. Parry v. Hazell, 1 Esp. R. 94, The parties may, however, agree upon a shorter notice than the law allows, and such agreement will be enforced ; for modus ct conventio vincunt legem. Thus in Doe d. Pitcher v. Donovan, 1 Taunt. 556, on a lease of a house from year to year, to quit at a quarter's notice, it is requisite that the quarter should expire with a year’s tenancy, but such a quarter’s notice is sufficient. Vid. Sauvage v. Dupuis, 3 Taunt. 409, where the tenant at will quitted too soon, and was held to pay rent afterwards.
Such have been the adjudications since the. statute of frauds, which, as well as those before the statute, prove that in a tenancy at will the parties are to give each other reasonable notice of a determination of the will. By which I do not mean that the tenant would be obliged to stop his plough in the middle of the furrow, and go off from the farm with his family, stock and goods, immediately after the warning. If that is all the notice the landloru is bound to give, I admit that the plaintiff in this case had time enough. He could have put his goods into the street as well as the lessor did, within the few days which were allowed by reasonable notice. But I mean, that the tenant shall have an allowance of time to keep the possession, sufficient to enable him to procure other accommodation, and to prevent any *81 loss or damage from the unexpected and unjust determination of the will of the lessor.
But it has been suggested, that our statute of 1783, c. 37, does not contain the 2d section of St. 29. Car. 2, c. 3, and that our provincial act of 4 Will, Mar. c. 3, does contain that clause; and therefore that the legislature did not intend to give the same meaning to the 1st section of the statute of 1783, which it would if that statute had contained the omitted section. If the decisions had been founded upon the exception in St. 29 Car. 2, this argument would be entitled to more attention. But I can find no case proceeding upon that ground. We should expect to find it admitted or proved, that the lease was such a one as is excepted from the general operation of the act. That would be an indispensable requisite to give it effect. But the decisions have been upon parol leases within the statute, and not in relation to such as were excepted from its operation.
The case of Legg v. Strudwick, 2 Salk. 414, (S. C. 11 Mod. 203, and Holt, 417,) cited to support this argument, in my judgment fails to do so. That was a parol demise de anno in annum et sic ultra quamdiu ambdbus partibus placeret, rendering an annual rent payable quarterly. And the court held that such an executory contract was u not void by the statute of frauds, though it be for more than three years, because there is hereby no term for above two years ever subsisting at the same time.” The statute provides, that all parol leases are to have the effect of leases at will only, “ except nevertheless all leases not exceeding the term of three years from the making thereofy whereupon the rent reserved to the landlord, during such term, shall amount unto two third parts at least of the full improved value of the thing demised.”
Now what evidence is there, that the lease in the case of Legg v. Strudwick was such a one as is excepted from the operation of the statute ? What was the amount of rent reserved, compared with the full value of the thing demised ? The case is altogether silent upon the point. There is not any mention made of the exception in the statute, or that the lease was supported in virtue of the exception.
The exception is of parol leases containing particular reservations, but the construction of the English courts has been as to the effect of parol leases generally, without any reference to the fact whether they were proved to have been such as .were described in the exception or not.
A reference to some of the cases with this view, will prove the correctness of the last remark.
In Timmins v. Rawlinson, 3 Burr, 1609, (in 5 Geo. 3,) Wilmot J. says 1 that in the country, leases at will, in the strict legal sense of a lease at will, being found extremely inconvenient, exist only notionally; and were succeeded by another species of contract, which was less inconvenient;” that it was “ established, that if a tenant takes from year to year, either party must give a reasonable notice before the end of the year;” and he says further, that this practice was established by judges upon circuits, but he does not mention the exception in the statute.
In the case of Doe v. Porter, 3 T. R. 13, 29 Geo. 3,) there was a parol *82 lease for seven years. The tenant died. Lord Kenyon states the opinion, in which the other judges concurred, that as between the original parties the tenant could not" have been dispossessed without six months’ notice ending at the expiration of a year; and that the interest devolved to his personal representative. “On this question,” said Lord Kenyon, “1 do not know how to state a doubt, for this was a chattel interest from year to year as long as both parties pleased.” He then proceeds to give some ac count of the tenancy from year to year, and states that it “ succeeded to the old tenancy at will, which was attended with many inconveniences. And in order to obviate them, the courts very early raised an implied contract for a year, and added that the tenant could not be removed at the end of the year without receiving six months’ previous notice.” He makes no allusion to the exception in the statute, which has no relation to a tenancy from year to year, and there would seem to be no proper occasion for any such reference.
De Grey C., J., in Roe d. Bree v. Lees, 2 W. Bl. 1173, says that “ leases for uncertain times are primd facie leases at will; it is the reservation of an annual rent that turns them into leases from year to year.” He draws no inference from the exception in the statute. But Mr. Justice Gould, in that case, goes far behind the statute, and says the idea of that kind of lease obtained as early as Cro. Eliz. He attributes nothing to the exception.
The true reason was not the exception in the statute, but (to use the words of Lord Kenyon, in Doe d. Martin v. Watts, 7 T. R. 85,) because “ it would be extremely unjust that a tenant who occupies land should, after he has sown it, be turned out of possession by an ejectment without any notice And it was in order to avoid so unjust a measure, that so long ago as the time of the Year Boolcs it was held a general occupation was an occupation from year to year, and that the tenant could not be turned out of possession 2oithout reasonable notice to quit.” Lord •Kenyon refers to 13 H. 8. 15, which fully warrants his opinion. And this matter is further explained in Clayton v. Blakey, 8 T. R. 3, which was a case of a parole demise for 21 years. The plaintiff counted upon a demise from year to year, and the objection was, that the plaintiff should have counted upon a tenancy at will. But the court determined, that the “ meaning of the statute was that it should not operate as a term; but what was then considered as a tenancy at will has since been properly construed to enure as a tenancy from year to year.” The court do not support the agreement upon the exception, and could not; for the agreement was for 21 years. That was a tenancy at will in virtue of the statute; but what was the consequence ? Not that the estate should be determined by caprice suddenly, but that the parties should not avoid such an agreement without reasonable notice to each other. It is to be regretted that it has not been always called a lease at will by the judges, as it is in the statute. But they speak of and mean the same thing, viz. a parol agreement for the occupation of real estate. The truth of the case is not to be affected by the name which is given to such an agreement. Call it a tenancy from year to year, or at will, or what you please, it is a contract *83 which gives the lessee a right to possess the estate until he has had reasonable notice to quit it.
So in the case of Rigge v. Bell, 5 T. R. 472, which was a parol lease for seven years, it was held void as a term; it was not held good tor three years, or any time, in virtue of the exception; but as the lessor had agreed verbally that the tenant should quit at a certain time of the year, the court held him to it.
In truth the exception was practically useless, and for that reason was omitted in the revised statute. I have not seen a case which has been decided upon it, where it has been ascertained that the rent reserved in the parol lease amounted to two thirds at least of the improved value, and therefore was not affected by the statute.
The decisions which I think should govern in this case, (which I have referred to,) rest upon the immutable principles of justice and the common law. They were made to prevent the effects which would follow from a capricious, unreasonable or fraudulent violation of a contract, which is frequently made as well in England as in this State. But the decisions since the statute of 29 Car. 2, not having been grounded upon that exception, are to be greatly respected by us. If, however, there had not been a single decision since the statute, I am well satisfied that at the time when that passed, a tenant at will was entitled to reasonable notice to quit, by the old authorities before cited.
For centuries before the statute, it was determined that this tenancy was to have a reasonable construction, which would be for the advancement of agriculture, and for the public good, as well as for the convenience and the distribution of justice to the parties.
The Roman law made a provision somewhat similar in regard to estates in the country, that where no time was expressed in the demise, it should be for a year and no longer, but in city estates until one or the other should renounce the contract; but it is added, “ this renunciation ought to he made with some grains of allowance, that the tenant or lessee may have the use of the thing, and not he obliged to quit the'same on a sudden." Ayliffe’s Civil Law, bk. 4, tit. 7, page 462; Brown’s Civil Law, bk. 2, ch. 3, S. P.
From the review of the cases it seems to me to be clearly settled, that where there is a parol agreement for a year, the parties cannot determine tlmir will within the year, but in such a case the agreement expires by its own limitation at the end of the year, if there is no renewal of it; that if the tenant should enter upon another year, without any objection of the lessor, the lessee shall hold for that year; and that if either party shall desire to determine his will during the second year, he shall be bound to give reasonable notice to the other of such determination.
With regard to what may be considered a reasonable notice, it would be difficult to say why six months, or any other particular time, should be held to be reasonable notice, rather than a few days or months more or less. It is a question of law, of which the court is bound to judge, and as it would be more expedient that general rules should be adopted, than that each case *84 should be governed by the discretion of the judge who may try it, I am of opinion, that so far as what is to be considered reasonable notice has been settled by judicial decisions in like cases, it should be adopted by this Court, and the principle of those decisions should be applied to all the cases that may arise, as well in relation to houses and other tenements as to lands. I do not think we could make better regulations upon this matter. And it is just as much the duty of the Court, to decide what is a reasonable notice of the determination of the will of the parties to a lease at will, as it was to settle what should be a reasonable notice to an indorser of a note. If the legislature shall at any time think these rules are inconvenient, they can interfere and remedy the supposed difficulty.
An observation in the opinion of this Court, as delivered by my learned friend, Mr. Justice Wilde, in Rising et al. v. Stannard, 17 Mass. R. 287, seems in some measure to support the doctrine for which I contend. Speaking of the case of Parker v. Constable above cited, and of the six months’ notice required to be given to a tenant at will in England, he remarks, that although he is not aware that the same rule has been adopted in this State, “ yet the principle on which it is founded, that the tenant shall have reasonable notice of the determination of an estate at will, is a principle of the common law, arising from the peculiar nature of such a tenure, and it is indispensable in order to constitute him a trespasser by holding over.” I assent fully to that remark. This doctrine has also been approved of in Pennsylvania. Brown v. Vanhorn, 1 Binn. 333, note, is a case upon a parol lease from year to year during will. Mr. President Wilson gave the opinion, that in such a case the lessor cannot determine his will at any time he pleases; that the moment another year commences, the tenant has a right to hold until the expiration of it; and that by the common law ever since the reign of Hen. 8, where there was a lease from year to year during the pleasure oj both parties, a half year’s notice to quit was necessary.
There is one point in which I believe all the books agree, which is, that the tenant at will is to have the emblements. But how shall he ever obtain them beneficially, if he is obliged to quit the farm immediately after notice ? Suppose the warning to be given when his corn is just coming out of the ground. Who is to cultivate it? Is it for the public good that it should be run over by weeds? Who is to keep the cattle from it ? If it should not be ploughed and hoed, of what value will it be to the tenant? It would seem a mockery to permit him in the autumn merely to go upon the ground and take away the half starved and earless stalks, as a compensation for his labor in ploughing, manuring and planting. Suppose the warning to be given in December. His corn, hay and other produce have been harvested. Shall the tenant be obliged to remove immediately after? Is it to be ex-pécted that he could find at that season an empty barn, or an unoccupied farm house ? But if he could, shall he carry off the hay with his cattle ? A few years of such farming would render the question of emblements not worth disputing about. The farm would be impoverished. Shall he be obliged to drive off his cattle to starve, or be fed at his own expense until spring *85 and leave the hay for the landlord? There can be but one answer. Such a claim would be oppressive, unreasonable, dishonest, and therefore not to be supported by the principles of the common law. The rule which has been adopted is reasonable. The course of agriculture requires at least one year to enable the cultivator to realize the fruits of his labor; and hence it is, that by the common law the tenant who held a farm under a verbal lease for a year at will, was not to be ousted before the end of the year, and if the agreement was tacitly renewed, six months’ notice should be given before the expiration of the new year, and so on.
For these reasons I think the plaintiff was entitled to the possession when the defendant ousted him, and may therefore well support an action of trespass for the injury. It follows therefore that the verdict, which was for the defendant, should be set aside, and a new trial should be granted. Reporter.

 By St. 1825, c. 88, § 4, the legislature fixed the law of notice to quit in cases of tenancies at will and at sufferance, on the sensible basis suggested by the learned judge in this case. It is provided by this statute, that all leases at will and tenancies at sufferance “ may be terminated by either party after giving the other party three months’ notice.” And where the rent is “ due and payable more frequently than quarterly, the notice shall be sufficient, if it be equal to the interval between the times of payments thereof.” But if the payment of rent due and in arrear is neglected or refused, fourteen days' notice to the tenant or occupant shall be sufficient.